IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID HILL,                              )
                                         )
    Plaintiff,                           )
                                         )
v.                                       )    CASE NO. 3:17cv00511-SMD
                                         )
NANCY A. BERRYHILL,                      )
Acting Commissioner of Social Security,  )
                                         )
    Defendant.                           )

## MEMORANDUM OPINION AND ORDER

David Hill ("Plaintiff") applied for disability insurance benefits under Title II of the Social Security Act in February 2014, alleging a disability date of August 27, 2013. (R. 110). Plaintiff's application was initially denied in July 2014. *Id.* Plaintiff filed a written request for a hearing, which was held in July 2015; following this hearing, the Administrative Law Judge ("ALJ") denied Plaintiff's claim. (R. 110-118). Plaintiff requested a review of the decision, which was granted, and the Appeals Council remanded the case to the ALJ. (R. 125-27). The ALJ held a second hearing in January 2017, (R. 30-67), and ultimately denied Plaintiff's claim. (R. 10-19). The Appeals Council denied Plaintiff's second request for review. (R. 1-3). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for the reasons below, the Court concludes that the Commissioner's decision is to be **REVERSED and REMANDED**.

1

# I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792

F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

There is no presumption that the Commissioner's conclusions of law are valid, and the Court may reverse the ALJ's decision if it fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)); *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). Applicants under DIB must prove "disability" within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to "[e]ngage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are

3

demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs the below five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." *McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on the claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants have established a prima facie case of qualifying for disability once they meet their burden of proof on Steps 1 through 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

To evaluate the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. A claimant's RFC is what he is

4

still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* The RFC can also contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are any jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

### III. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was thirty-four years old on the alleged onset date of August 27, 2013. (R. 91, 323). He has a twelfth-grade education. (R. 72). He had previously worked as a U.S. Army Cavalry scout, a diesel engine mechanic, and a heavy truck driver. (R. 60). Plaintiff's alleged disability is due to post traumatic stress disorder (PTSD), traumatic brain injury (TBI), right knee degenerative joint disease, lumbar degenerative disc disease & spondylosis, right shoulder impingement, and sleep apnea. (R. at 431).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, and that Plaintiff has the following severe impairments: affective mood disorder, anxiety disorder, lumber/thoracic spine disorder, right knee disorder, bilateral

5

shoulder disorder, asthma, obesity, obstructive sleep apnea, insomnia, bilateral pes planus deformity, and history of traumatic brain injury. (R. 12). The ALJ concluded, however, that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (R. 13). In coming to this conclusion, the ALJ considered the evaluation reports and opinions of three doctors. (R. 13-14). The ALJ found that Plaintiff "has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b)" and found that Plaintiff can work as follows:

> [Plaintiff] can occasionally perform overhead reaching using his bilateral upper extremities. He is unable to use his right lower extremity in operating foot controls, and [Plaintiff] is unable to climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally climb stairs, and he can occasionally engage in stooping, bending, crawling, and kneeling activities. He must avoid working near workplace hazards, such as unprotected machinery or exposed heights. [Plaintiff] must also avoid exposure to loud noises. [Plaintiff] must avoid interaction with the public, and he is unable to perform complex tasks (only unskilled work). [Plaintiff] may require use of a cane for assistance with ambulation and balance on uneven terrain or for distance greater than 50 meters.

(R. 15). The ALJ found that Plaintiff could not perform any past relevant work, (R. 17), but, considering his age, education, work experience, and residual functional capacity, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (R. 18). Thus, the ALJ found Plaintiff not disabled. (R. 19).

## IV. MEDICAL HISTORY

Plaintiff and/or his medical records were examined by four physicians. Dr. June Cooley, Psy.D., first performed a psychological consultative examination on September 13, 2013. (R. 865). Dr. Cooley noted that Plaintiff experienced insomnia, nightmares,

6

emotional detachment, emotional numbing, lack of motivation, decreased interest in leisure activities, and social isolation; she further stated that the severity of these symptoms was moderate. *Id.* Dr. Cooley also noted that Plaintiff's speech and communication skills and concentration abilities were normal, and that Plaintiff's thought processes, ability to understand direction, memory, abstract thinking, and judgment were good. (R. 867-68). Dr. Cooley found that Plaintiff suffers from PTSD, which has resulted in Plaintiff's "impaired relationships and poor job performance." (R. 869).

Dr. Scott Jay Stewart, Ph.D., also performed a consultative psychological examination of Plaintiff on June 13, 2014. (R. 898). Dr. Stewart found Plaintiff unable to relate with people and noted that Plaintiff appeared anxious and depressed during the examination. (R. 898-900). Dr. Stewart also found that Plaintiff had mild deficits in memory function, unimpaired abstraction abilities, an adequate "fund of general information," and grossly intact judgment. (R. 899). Dr. Stewart concluded that Plaintiff suffers with PTSD, Major Depressive Disorder, and Cognitive Disorder Not Otherwise Specified ("NOS"). (R. 902).

Robert Estock, M.D., a state consultative physician, reviewed Plaintiff's medical evidence in July 2014 and completed a Mental Residual Functional Capacity Assessment ("MRFC"). (R. 101-03). He found that Plaintiff's understanding and memory limitations, concentration and persistence limitations, social interactions limitations, and adaptation limitations were minor to moderate. (R. 101-2). He stated that Plaintiff could "understand, remember, and complete simple tasks," and could "maintain attention sufficiently to complete simple 1-to-2 step tasks for periods of at least 2 hours, without the need for special

7

supervision or extra work breaks." (R. 102). He found that Plaintiff "could complete an 8-hour workday, provided all customary breaks from work are given" but advised that Plaintiff needs "a flexible daily schedule in a well-spaced work setting." (R. 103). Finally, he stated that Plaintiff "can tolerate casual, non-intense interaction with member[s] of the general public and co-workers" but that "[s]upervision and criticism should be supportive and non-confrontational." *Id*.

Finally, Dr. William D. King, M.D., performed a physical disability examination of Plaintiff in July 2014. Dr. King found that Plaintiff had normal strength and tone in his cervical and lumbosacral spines; could squat at 90 degrees; had a normal heel to toe walk and a normal tandem walk; had normal motion in his feet and ankles; and had a normal range of motion, strength, and tone in his knees. (R. 903-13).

The ALJ concluded, based on the doctors' opinions, that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1450.1525 and 404.1526)." (R. 13). The ALJ found that Plaintiff only has moderate limitations because he can understand directions, his memory is within normal limits, and he can handle daily activities. *Id*. Thus, the ALJ found that, although Plaintiff could not perform any past relevant work (R. 17), "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (R. 18).

In addition to the aforementioned medical opinions, the Veterans Administration determined that Plaintiff was permanently disabled for a service-connected disability, specifying 50% for headache syndrome; 10% for traumatic brain injury; 20% for left

8

shoulder strain and impingement syndrome; 20% for right shoulder impingement syndrome; 10% for lumbar degenerative disc disease; and 10% for right knee ACL tear status post reconstruction with osteoarthritis. (R. 1000-01). The VA also afforded Plaintiff a 100% disability rating for PTSD. (R. 1001).

## V. PLAINTIFF'S ARGUMENTS

Plaintiff identifies the following two issues in his "Statement of the Issues:"

1) The Commissioner's decision should be reversed because the ALJ granted great weight to the medical opinions of Drs. Cooley and Stewart in which include more restrictions and limitations than the ALJ found in her RFC finding.

2) The Commissioner's decision should be reversed because the ALJ erred as a matter of law by failing to assign the requisite "great weight" to the disability determination reached by the United States Department of Veteran Affairs as mandated in *Brady v. Heckler*, 724 F. 2d 914, 921 (11th Cir. 1984).

(Doc. 8) at 3.

## VI. ANALYSIS

**A. The ALJ erred by failing to include within Plaintiff's RFC the limitations stated by the examining psychologists' opinions despite affording those opinions great weight.**

Plaintiff argues that the ALJ failed to properly consider the examining psychologists' opinions in formulating Plaintiff's RFC despite affording those opinions great weight. (Doc. 8) at 4. Specifically, Plaintiff argues that the ALJ failed to properly explain why she did not include all of the impairments set forth by Drs. Cooley and Stewart within Plaintiff's RFC, and Plaintiff requests remand so that "all limitations identified by Drs. Cooley and Stewart may be considered upon [Plaintiff's] ability to work on a regular and continuing basis." *Id*. at 9.

9

Dr. Cooley performed an examination of Plaintiff on September 13, 2013, and found that Plaintiff, due to combat exposure from 1998-2013, suffers from depression, insomnia, emotional issues, decreased motivation, and social isolation, which result in impaired relationships and poor job performance. R. 865. Dr. Cooley also found that Plaintiff suffers from PTSD, which causes irritability, outburst, impaired relationships, and poor job performance, which result in reduced reliability and productivity. R. 869. However, Dr. Cooley found Plaintiff's speech and communication skills and concentration abilities normal, and Plaintiff's thought processes, ability to understand direction, memory, abstract thinking, and judgment good. R. 867-68.

Similarly, Dr. Stewart found that Plaintiff has a difficult time relating to people and has problems with memory and balance. R. 898-99. Dr. Stewart found Plaintiff's mood to be "anxious and depressed," and noted that Plaintiff reported symptoms associated with PTSD. R. 900. Further, Dr. Stewart found Plaintiff "to have limitations with the interpersonal skills required to relate to others in a work setting." R. 900. However, despite these limitations, Dr. Stewart also found that Plaintiff was "fully able to manage his own activity or daily living needs." R. 900.

> The ALJ ultimately concluded that, in relevant part, Plaintiff
>
> has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b). . . . The claimant must also avoid exposure to loud noises. The claimant must avoid interaction with the public, and he is unable to perform complex tasks (only unskilled type work)[.]

R. 15. Plaintiff contends that this finding is inconsistent with the opinions of Drs. Cooley and Stewart, and that the ALJ committed legal error by failing to adequately explain why

10

he found fewer restrictions and limitations than the doctors. (Doc. 8) at 8. Specifically, Plaintiff argues that Dr. Cooley's opinion that Plaintiff's psychiatric symptoms caused "occupational and social impairment with reduced reliability and productivity" and his opinion that Plaintiff has "difficulty establishing and maintaining effective work/school and social relationships because of depression, irritability and social isolation" are not accounted for in the ALJ's RFC finding. *Id.* Similarly, Plaintiff argues that Dr. Stewart's opinion that Plaintiff experiences "limitations with the interpersonal skills required to relate to others in a work setting" is not accounted for in the ALJ's RFC finding. *Id.*

Plaintiff cites *Cox v. Astrue*, Civil Action No. 1:11cv519-WC, 2012 WL 2445067 (M.D. Ala. June 27, 2012), for the proposition that an ALJ has a duty to express why she deviates from the examining doctors' opinions after giving great weight to their opinions. *Id.* at 9. In *Cox*, this Court determined that a failure to properly explain the deviation from an examining doctor's opinion, which was afforded great weight, is an error that hinders the reviewing court from "conduct[ing] a full review of the ALJ's decision to determine whether it is supported by substantial evidence." 2012 WL 2445067, at *4.

The undersigned finds Plaintiff's argument persuasive. In so concluding, the undersigned first notes that the ALJ is ultimately responsible for determining a claimant's RFC, and she is not required to adopt wholesale a medical opinion to which she affords great weight. *Roberts v. Comm'r of Soc. Sec.*, No. 6:10-CV-930-Orl-DAB, 2012 WL 85172, at *3 n.3 (M.D. Fla. Jan. 11, 2012) (finding no error where the ALJ gave significant weight to a medical opinion but did not incorporate all limitations from the opinion in the RFC finding where there was no evidence that Plaintiff's past work is precluded by these

11

limitations). However, when a medical opinion is afforded great weight, the ALJ may not reject unfavorable portions of the opinion when formulating a Plaintiff's RFC without providing sufficient reasoning for such rejection. *See Barthol v. Astrue*, Civil Action No. 1:08cv39-CSC, 2008 WL 5273113, at *6 (M.D. Ala. Dec. 18, 2008) ("The ALJ is not free to simply ignore medical evidence, nor may the Commissioner pick and choose between the records selecting those portions which support his ultimate conclusion. Therefore, the court cannot conclude that the ALJ's [ultimate conclusion] is supported by substantial evidence."); *Sweat v. Berryhill*, Civil Action No. 5:17-cv-52, 2018 WL 4043192, at *5 (S.D. Ga. Aug. 24, 2018) (holding that, where the ALJ gave a treating physician's opinion great weight, the ALJ was required provide non-speculative reasoning why portions of the opinion were rejected); *Smith v. Colvin,* Civil Action No. 2:13-00275-N, 2014 WL 518057, at *3 (S.D. Ala. Feb. 10, 2014) (stating that "[p]icking some restrictions [within in a medical opinion] while rejecting others **without explanation** is clearly grounds to find that an ALJ's decision is not supported by substantial evidence") (emphasis in original).

Here, the undersigned finds that the ALJ did not account for Dr. Cooley's opinion that Plaintiff's psychiatric symptoms caused "occupational and social impairment with reduced reliability and productivity" despite affording that opinion great weight. A review of the ALJ's entire opinion does not point to any particular evidence that contradicts that opinion concerning Plaintiff's reliability and productivity. To be sure, the ALJ does note that Dr. Cooley found that Plaintiff "had not lost any time from duty due to any psychological problem"; however, such a statement does not necessarily indicate to the undersigned that Plaintiff, in the civilian work force, would prove reliable and productive.

12

Further, the undersigned cannot conclude that the ALJ's failure to include this additional limitation, without proper justification, is harmless. During the hearing before the ALJ, Plaintiff's attorney inquired of the VE as to whether productivity and reliability issues would affect Plaintiff's ability to perform the jobs cited. R. 63-65. The VE affirmed that productivity and reliability issues would indeed affect Plaintiff's ability to maintain employment, testifying specifically that the jobs referenced required "a certain amount of quota or expectations within [an] eight-hour workday," and that, if production was not met, termination would occur. R. 63-65.

Accordingly, the undersigned finds that the ALJ's failure to offer any explanation in her apparent decision to discount Dr. Cooley's limitation as to Plaintiff's productivity and reliability is not harmless error. On remand, the ALJ must explicitly consider and explain the weight to be accorded to Dr. Cooley's medical opinion. If the opinion is to be afforded great weight, the ALJ must include Dr. Cooley's opinion that Plaintiff's psychological symptoms translate into reduced reliability and productivity in the workplace within Plaintiff's RFC, or the ALJ must adequately explain why that opinion is excluded.

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court REVERSES and REMANDS the Commissioner's decision.

A separate judgment will be entered.

13

DONE this 26th day of March, 2019.

/s/ Stephen Doyle
UNITED STATES MAGISTRATE JUDGE